JOHN CRUSOE *v.* THOMAS J. BUTLER AND WIFE.

1. CONFLICT OF LAWS: REALTY PASSES ACCORDING TO THE LEX REI SITÆ.—The conveyance of real estate must be made according to the law *rei sitæ,* which alone can prescribe the mode in which the title to such property, or any right or interest therein, may pass; and hence a will made and admitted to probate in a foreign State, or in one of the States of this confederacy, is not sufficient to pass the title to land situated in another State, unless the will be admitted to probate in the latter jurisdiction, according to its laws. See 10 Wheat. 202; 7 Cranch, 115; 9 Wheat. 565; 4 Bibb, 484; 10 B. Munroe, 428; 2 Ib. 380; 17 Ala. R. 290.

2. SAME: PROBATE OF FOREIGN WILL: UPON AUTHENTICATED COPY.—An authenticated copy of a will bearing on its face the requisites of the laws of this State to pass realty by devise, and shown to have been duly proven and admitted to record in another State in which the testator was domiciled, may be admitted to probate in this State, and will be effectual to devise lands situated here. See Hutch. Dig. 631; Rev. Code, § 25.

3. WILL: WHEN THERE ARE THREE SUBSCRIBING WITNESSES, PROOF OF EXECUTION BY ONE SUFFICIENT.—When it appears from the probate of a will that there are

Crusoe *v.* Butler and wife.

three subscribing witnesses, it may be proven by one witness so as to authorize its probate to pass realty, if the witness examined prove that it was duly attested by the others. See *Cornelison* v. *Browning,* 10 B. Munroe, 425.

4. SAME: PRESUMPTION IN FAVOR OF DUE PROOF ON PROBATE.—If the record of the probate of a will, which appears on its face to have the requisite number of subscribing witnesses to pass realty, state that " it was duly proven by one of the witnesses, and admitted to probate," and it does not affirmatively appear that that witness proved only the attestation by himself and execution in his presence, it will be presumed, in a controversy respecting the title of the real estate thereby devised, that the witness testified to every fact necessary to the due execution of the will to pass real estate, and the probate will be valid as to the realty.

5. PROBATE COURT: JUDGMENT ALLOWING PROBATE OF A WILL CANNOT BE ATTACKED COLLATERALLY.—The Court of Probates of this State, has jurisdiction to admit to probate and record an authenticated copy of a will, made and probated in another State, where the testator was domiciled, and its judgment allowing the probate of such will cannot be attacked collaterally, but only by a · direct proceeding for that purpose. See *Griffith's Admr.* v. *Vertner,* 5 How. 736.

6. EXECUTOR: PROBATE OF WILL: WHEN EXECUTOR MAY ACT BEFORE PROBATE.— By the common law of England, " the probate of a will is merely operative as · the authenticated evidence, and not at all as the foundation of the executor's title ; for he derives all his interest from the will itself, and the property of the deceased vests in him from the moment of the testator's death, and the probate when produced relates back to that time." This rule, though probably inapplicable under our laws to a disposition of property which is strictly assets, made by the executor before probate, does apply to a sale of realty made by the executor under a special power conferred by the will, and not appertaining to the office and duties of an executor, in the ordinary administration of the estate; and hence, where an executor in execution of a power conferred by a foreign will, which was duly probated in the State where it was made, sold and conveyed lands situated in this State, before its probate here, it was held that a valid title passed to the grantee, which would be protected upon the subsequent probate and record of the will in this State.

7. SAME: FOREIGN EXECUTOR NEED NOT QUALIFY HERE IN ORDER TO EXECUTE POWER TO SELL REALTY.—It is not necessary that an executor who has qualified under a will made and duly probated in a sister State, should take out letters testamentary in this State, to enable him to exercise a special power conferred by the will to sell real estate situated here ; it is sufficient if the will be admitted to probate and record in this State ; for as the grant of letters testamentary as authority to the executor to act, has reference alone to the personalty and the ordinary offices of administration, the only necessity for the grant of letters was to fix the person who was to execute the power granted by the will, and that was done by the grant of letters in the State where the will was made and probated.

8. CONFLICT OF LAWS: WILL OF IMMOVABLES CONSTRUED ACCORDING TO THE LAW

OF THE TESTATOR'S DOMICIL.—The nature, meaning, and interpretation of a will of immovable property, and the rights and powers arising under it, are to be determined by the law of the domicil of the testator, and not by the law *rei sitæ.*

ERROR to the Circuit Court of Lowndes county.    Hon. William L. Harris, judge.

The case is very fully stated in the opinion of the court.

*R. Evans,* for plaintiff in error,·

Filed an elaborate printed brief, in which he made the following points : —

1. The probate of the will in Alabama, the testator's domicil, is a judgment, which is binding in this State, without a probate here; and the record is admissible under the Act of Congress of the 26th of May, 1790.    *Melvin* v. *Lyons,* 10 S. & M. 78 ; *Lancaster* v. *McBride,* 5 Iredell, 421 ; *Hyman* v. *Gaskins,* 5 Ib. 268 ; *Helme* v. *Sanders,* 3 Hawk. 563 ; *Balfour* v. *Chew,* 5 Martin La. Rep. (N. S.) 517 ; 6 Ib. 621 ; *Ripple* v. *Ripple,* 1 Rawle, 386 ; *Ex parte Povall,* 3 Leigh. 816 ; *Puryear & Wallace* v. *Beard,* 14 Ala. 128 ; *Robertson* v. *Barbour,* 6 Munroe, 527 ; *Elmendorf* v. *Carmichal,* 3 Littell, 479 ; 2 A. K. Marsh. 555 ; 6 Hamm. 174.

2. When the will was probated here, an authenticated copy was certainly admissible.    Hutch. Dig. 651, § 25 ; *Montgomery and wife* v. *Milliken,* S. & M. Ch. R. 497 ; 5 S. & M. 188.    The judgment of the Probate Court at Lowndes is conclusive, and cannot be attacked in this suit.    *Scott, Adm.* v. *Calvert,* 3 How. 158 ; *Stubblefield* v. *McRaven,* 5 S. & M. 143 ; *Griffith's Adm.* v. *Vertner,* 5 How. 736 ; *Baily* v. *Baily,* 8 Ohio R. 239.

3. The fact that the will of Leavens was probated in Lowndes county, in this State, after this suit was brought, makes no difference ; the title passes by the will at the testator's death, and the probate relates back to that time ; the probate is the mere evidence, and not the foundation of the devisee's title.    *Osgood* v. *Franklin,* 2 John C. R. 18 ; *Fell* v. *Lutwidge,* 2 Atk. R. 120 ; *Poole* v. *Fleeger,* 11 Pet. 211 ; 9 Ohio, 96 ; 1 Jarm. on Wills, 212 ; Lovelass on Wills,

383; 2 Greenl. Ev. 325; Ib. 631; Ib. 672; *Redmond* v. *Collins,* 4 Deveraux Law R. 445.

4. This will purports, on its face, to be attested by three witnesses : its proof by one is sufficient. The presumption is, that it was duly proven, unless the contrary is shown. *Morgan* v. *Bass,* 3 Iredell, 243.   One subscribing witness is sufficient to prove it.   *Bowling* v. *Bowling,* 8 Ala. R. 539 ; *Herbert* v. *Hanrick,* 16 Ala. 591; *Turnipseed* v. *Hawkins,* 1 McCord, 272; 2 A. K. Marsh, 229 ; *Davis* v. *Mason,* 1 Pet. 508 ; *Coleman* v. *McKinney,* 3 J. J. Marsh. 248 ; 2 Greenl. Ev. § 694 ; *Hilliard* v. *Binford's heirs,* 10 Ala. 983.

5. It was unnecessary that letters testamentary should have been granted in this State, to authorize the executor to sell.

6. One executor had power to sell, in this case.   See 8 Porter R. 380.

*James T. Harrison* and *C. R. Crusoe,* for defendant in error.

The most important inquiry, and the one to which the others are subordinate, is the validity and effect of the deed, from Benjamin Leavens, Ex., to A. Mann, Jr., executed in 1841, in the State of Alabama ; for the object and purport of the evidence offered was with direct reference to this deed, it being the defendant's only pretended muniment of title.   There is no dispute as to the fact, that when said deed was executed, no letters of executorship, or probate of will, had ever been had in the State of Mississippi, where the land was.

There is no principle better settled, than even where a power under a will is given to an executor to sell immovable property, it cannot be executed, unless upon due probate of the will in the place where the property is situate, and showing it may be lawfully sold by the *"lex rei sitœ."*   Story Conf. Laws, 419, § 509; 12 Wheaton, 169 ; *McCormack et al.* v. *Sullivant,* 10 Wheaton, 192.

The principle is this, that as a devise of the land will not be effectual, unless made and approved according to the *"lex rei sitœ ;"* therefore the simple fact, that it was adjudged sufficiently proven, according to the law of a different sovereign, and in a court unacquainted with the law of this State, cannot be admitted as sufficient proof to authorize a court of the country where the land lies, to

decide there had been a legal devise of it. *Barnes* v. *Bradshaw*, 2 B. Munr. R. 382, 383; *Carmichal* v. *Elmendorf*, 4 Bibb R. 484; 27 Miss. R. 162; 5 J. J. Marshall, 466, 467.

In the case of *Barnes* v. *Bradshaw*, 2 B. Monr. 380, it was held that a certified copy of a will, purporting to pass property in Kentucky, but which was proven and recorded in Mississippi, was not sufficient to prove that the will had been executed and proven according to the law of Kentucky; and so in case of *Varner's Ex.* v. *Basil et al.* 17 Ala. 290, the court say: "Where the use of such a will, as cannot be effectual here unless made according to local law, becomes necessary as evidence of a testamentary right, a probate in a foreign forum may authorize a copy to be proven and admitted to record here; but such copy, however certified, is not, *per se,* any evidence of the valid execution of the will, the disposition of real estate being governed by the law of the place where it is situated; the formalities necessary to give it effect must be governed by the '*lex rei sitæ.*' " Story Conf. Laws, § 474.

The farthest that any court has gone, is to admit authenticated copies, duly probated and proven in this State, as evidence, when the authenticated copy on its face shows that it possesses all the solemnities of the State, where the land is situate, otherwise though an authenticated copy of the will probated in a sister State, and on such copy admitted to probate here, it would not be competent evidence, or valid as to land in this State, unless the requisitions of our statute had been complied with. The reasoning of the court in the case of *Sturdivant* v. *Neill et al.* 27 Miss. R. 165, is conclusive; and the same principle is applicable as in that case; for having direct reference to realty in this State, our laws must govern, and though the will may have been probated in Alabama, yet how is this court, from this evidence, to learn that the will was executed according to the laws of Mississippi, by which its validity can alone be tested. 10 B. Monroe, 425; *Ex parte* Todd, 3 Leigh. R. 819; *Hood* v. *Matthews*, 2 A. K. Marshall, 555; 1 Lomax Ex. 118; 11 U. S. Digest, 473, § 47.

Now the two transcripts of alleged will and probate from the court in Alabama, not only had not at date of deed to A. Mann, ever been even made out, but when offered, showed on their face

affirmatively that the requirements of our statute as to the probate had not been complied with.

Our law requires three witnesses in a devise of lands. Hutch. Code, 649. And though attested by the proper number of witnesses, yet it has been held by our court, if only proven by one of the attesting witnesses, it will not afford sufficient foundation for the devisee under the will to assert title to real estate, &c. *Ragland* v. *Green*, 14 S. & M. 194; *Evans* v. *Evans*, 10 S. & M. 403; 8 Ala. R. 539.

And in any controversy respecting title to land, it must be shown that the will was established by the requisite number of witnesses. *Ragland* v. *Green*, 14 S. & M. 199; 1 Wendell, 406.

Thus, in Kentucky, it was held that where A. died in Tennessee, leaving a will devising certain lands in Kentucky, and the will was proven in Tennessee, but from the certified copy of the record produced in court, in the State of Kentucky, it did not appear that the will was attested by at least two witnesses in the presence of the testator, it was held that as that was necessary by the laws of Kentucky, and as the lands in that State could only be disposed of according to its laws, the will was not admissible in evidence of the title which it made. *Cornelius* v. *Browning*, 10 B. Monr. 425; 11 U. S. Digest, 473, § 47.

It matters not where the will is made, if it attempts to convey land in this State, it must be proven by three witnesses.

In this country a will must be probated and proven before it can be used as evidence to establish title of any one claiming under it. *Wilkinson* v. *Leland*, 2 Peters R. 655; 1 Pickering R. 114, 535; *Laughter* v. *Atkins*, 1 Pickering R. 549; 2 Howard U. S. R. 646; 14 Georgia, R. 185; 2 Kelly R. 44.

Again, the copies offered, show there was no devise to the executor, and there is a material distinction between a devise to executors to sell, and power conferred on the executor; in the latter case it is attached to the office. 26 Ala. R. 430; 8 Porter R. 394.

In this country an executor, before he can obtain letters testamentary (which is his authority to execute the directions of the will), is required to enter into bond, with sufficient sureties, and to take an oath to perform the duties of his office: from thence it is obvious that executors here derive their authority not from the will

entirely, and are not authorized to exercise any power until they have given the bond and taken the oath prescribed by the statute. *Cleveland et al.* v. *Chandler*, 3 Stewart R. 491; 1 Lomax on Ex. 83; *Wilkinson* v. *Leland*, 2 Peters R. 655.

Our statute provides that when an authenticated copy of a foreign will is offered for probate here, it is not only liable to be contested, but all the executors named therein, shall be entitled to letters testamentary in this State, in the same manner as if the original will had been probated here; letters are necessary before the party can undertake the office of executor.

The copies offered show that there were two executors named in the will, and the land was sold by one only, and he alone qualified in the State of Alabama: no letters of executorship have ever been taken out in this State. The right of an executor to sell can only be derived under a special authority, and the lands being in this State, the "*lex rei sitæ*" governing, not only should the will have been first probated here, but letters of executorship taken out also in this State, prior to any exercise of power under the will, to dispose of the real estate in this State.

Two executors were appointed. The will and codicil show there was simply a discretion vested in the two, or the survivor, to sell, &c., but not a direct devise to the executor to sell. The executor took no title to the land under the will. The statute, Howard & Hutch. 671, is not applicable to this case, applying as it does only to land *devised* to be sold, positively and unconditionally. By our statute, the sale and conveyance of land "*devised* to be sold" may be made by such of the executors as undertake the execution of the will; but as the will was not admitted to probate or letters of executorship taken out in this estate, its execution in the sense intended by the legislature, cannot be said to have been undertaken by any of the executors. *Carmichal* v. *Elmendorf*, 4 Bibb, 485; *Varner's Ex.* v. *Basil*, 17 Ala. 290.

The will limits the trusts therein specified to the testator's said executors, or the survivor of them. The second is not dead; but if the power to sell is attached to the office of executor, how can the executor in Alabama sell the lands in this State? This has been settled, in a branch of this case, by the courts of Alabama. *Leavens* v. *Butler and wife*, 8 Porter R. 401.

According to the common law as it has been, as far back as the reign of Henry VI., if one devise that his executors shall sell his land, and die seised, his heir is in by descent, and consequently the executors have only a power; but if one devise his lands to his executors to sell, then the freehold passes to them by the devise. This distinction, viz., "between a devise of lands to executors to sell," and a devise that the executors "shall sell the land," is mentioned by Justice Doderidge as a common difference; and it received the sanction of Coke and Littleton, and of modern determinations. *Patton et al.* v. *Crow,* 26 Ala. 431; Litt. § 169; Co. Litt. 113, a, 181, b; *Yates* v. *Compton,* 2 Peere Williams, 308; 4 Kent's Com. 320; *Peck* v. *Henderson,* 7 Yerger R. 18; *Jackson* v. *Schauber,* 7 Cowen R. 187.

And the executors being simply invested with a power and trust, this could only be exercised by both joining, after due probate of the will in this State, and the granting of letters of executorship. 24 Miss. R. 395, 396, 401, 403; 3 Bibb R. 349.

Hence, we think it manifest that there was no error in excluding from the jury the copy of bond of Benjamin Leavens, as executor, and letters granted him in the State of Alabama, or the two transcripts of copy of will and probate in the State of Alabama (contained in record, 9, 11, 12, 13, 14, and 16).

For the reason that they were incompetent and irrelevant: —

1st. The deed from B. Leavens, executor, to A. Mann, under which defendant claimed title, bears date 11th of April, 1841, and was executed in Alabama to lands in this State; no probate of any will ever having been made in this State, nor letters of executorship granted by any court of this State.

2d. The transcripts, on their face, show that it was only proven by one witness in Alabama.

3d. Letters testamentary granted in Alabama, or probate of will in that State, conferred no authority on executors to act in this State.

4th. The object and purport of these transcripts was in aid of the deed from one of the executors, of date 17th April, 1841, executed in Alabama, which was invalid and a nullity, and could not be rendered valid by subsequent acts. The executor must have had

the authority, at time of the execution of the deed; its validity must be determined by facts, existing at time of its execution.

It is true that long after the institution of this suit, it seems that R. Evans, one of the attorneys of A. Mann, on an *ex parte* petition, in August, 1854, attempted to have the probate of copy procured in this State; but this whole proceeding was a nullity, and could not render valid the deed made by the executor in 1841, without probate.

There are but two known ways of probating a will,—the one in common form, the other in solemn form. A will may be proved in common form, when the executor presents it; or in solemn form, by next of kin, when those in interest are cited to appear; but what right has an attorney, without making any parties to the proceeding, or giving any notice, to have a will probated? 1 Lomax on Ev. 97; 4 Dev. Law R. 430.

It is said, also, that the court erred, in excluding from the jury the transcript of suit, in U. S. Court at Mobile, of *St. John et al.* v. *B. Leavens et al.*, and depositions of Dunn, Sheffield, St. John, and Campbell. On examining this evidence, it will be seen that the whole was with reference to the consideration of the deed of the executor of Leavens to Mann, executed in 1841. If the executor had no power to execute the deed, of course this was incompetent and irrelevant; as indeed it was, in any view, incompetent as against plaintiff, who was a *feme covert* and minor; and on examination, will be found to have nothing to do with the issue involved, the *title to the land* in controversy.

It is also assigned as error, that the court ruled out a transcript of suit v. *Merchants and Insurance Co.* and copy of compromise. The object of this seems to have been to have proven a compromise. This had no relevancy to the issue, and indeed was no proof of any thing. The copy of paper sought to be made evidence was an exhibit to a third person's answer; and there was no proof of the execution of the original, or that *it* was ever executed, or notice given to produce it, and in fact had no reference to the land in controversy, and was never acknowledged by Mrs. Butler, and was in fact a proposition as to the release of sureties on executor's bond, &c. See Record, 175, 176. And in fact, the whole of this evidence was offered with a view to support the consideration of the deed of

Leavens, executor, of 1841, upon the assumption, that he as executor was invested with power to execute the same.

The last evidence which was ruled out, and which, with the foregoing noticed, embraced all that was offered, was the transcript of a suit in Chancery Court of Alabama (see Record, 136), and petition filed (see Record, 9 and 10). The object and purpose of this evidence was to prove the execution of a will, by the admission of a *feme covert* as evidence.

Had it been received, it could not have affected the issue; but it was clearly incompetent, and the court properly ruled it out.

The object of this evidence, as avowed, as well as the introduction of the other transcripts, was to bind the real plaintiff, Helen Butler, by admissions or statements, made in joint answer of herself and husband, and to prove by her admissions, then being a *feme covert*, the due execution of the will, all of which was clearly incompetent.

A will cannot be established or proven by admissions or declarations. *Collins* v. *Elliott*, 1 Harr. & John. 1; 5 Rawle, 235.

It must be probated and proven before it can be used to establish title in any one. 1 Pick. 114; 2 Peters R. 655; 2 Kelly, 32.

In the case of *Welland Canal Co.* v. *Hathaway*, 8 Wendell R. 486, the court say they are not advised of any principle in the law of evidence which will authorize the substitution of the declarations of a party, even as against himself, for record or written evidence, and thereby dispense with its production; such admissions rank only with oral testimony, and are entitled to no higher weight. It may be laid down as an undeniable proposition, that the admissions of a party are competent evidence against himself, only in those cases where parol evidence would be admissible to establish the same facts, or, in other words, when there is not better evidence in existence to be produced; the doctrine of estoppel, which can only be by deed or record, has no application: admissions are not evidence to establish deeds or records. *Morgan* v. *Patrick & Smith*, 7 Ala. R. 188; 1 Stewart R. 174; 8 Wendell, 483, 486; 10 Johnson R. 248; *Fox* v. *Kidd*, 3 Johnson R. 477; *Jenner* v. *Joliffe*, 6 Johnson R. 9.

And even were such evidence ordinarily competent to prove a will,

the rule would not apply in the case of a *feme covert*, where the answer or bill, containing the admission sought to be used, was the joint one of husband and wife; for, where a married woman, having a separate interest, joins, either as co-plaintiff or co-defendant, with her husband, it is to be considered as suit or defence of the husband, and will not prejudice the wife's future claim. *Hughes* v. *Evans*, 1 Sim. & Stuart R. 185; Ib. 1 Con. Eng. Ch. R. 92; Barbour Ch. Prac. 153.

Admission of wife, in joint answer with husband, is no evidence against wife. *Elston* v. *Wood*, 2 Mylne & Keen R. 678; 8 Con. Eng. Ch. R. 182.

Admission made by *feme covert*, in joint answer, will not be permitted to be read against her. *Hodgson and wife* v. *Merest et al.* 9 Price R. 556; Ib. 4 Exchequer R. 200; *Evans* v. *Cogan*, 2 Peere Williams R. 450.

Nor is answer of husband any evidence against wife. 8 Porter R. 380.

*Geo. L. Potter*, on same side.

The agreed facts show that Mrs. Butler, as sole heiress of the patentee, her father, was entitled to the land sued for, if her title was not divested by the deed from Leavens, the executor, to Mann.

We insist that deed was inoperative, for want of authority to convey.

The deed was made in 1841. No letters were ever issued to Leavens in Mississippi, and no attempt was made to probate the alleged will here, until 1854.

The lands being situate here, the controversy depends wholly upon the laws of Mississippi, and it is immaterial what were the powers of that executor in Alabama. The grant of letters in Alabama conferred no authority to act beyond that State; the probate there conferred no authority to sell lands in Mississippi.

If the will had been made by a citizen of this State, our laws would have required its production, probate, and registration; and that the executors, before acting, should qualify by taking the oath and giving the bond of office. If they had for forty days failed to produce the will, or had failed to qualify, they would have forfeited the right to do so, and administration would be granted to others.

The oath is to be taken in all cases, and security given, unless waived by the will; and even then the court may require security. An executor is required to return an inventory, and to make reports, precisely as an administrator. He cannot take the property to his own use, nor sell at private sale, except when specially directed by the will. Hutch. Code, 650, §§ 22, 23, 24; 652–3, §§ 31, 33, 34; 669, § 109.

There is no practical difference in these particulars, between wills of real and personal estate. In either case there must be a probate of the will and a grant of letters. It has been said that an executor derives his authority from the will, but our laws have imposed restrictions, and have superadded the necessity of *judicial sanction*, before he can act. There must be a grant of letters, and to that end the oath and bond of office, and preliminary to all a probate and registry of the will.

In view of the requirements of our laws, this court has said that, until probate, "no testamentary writing can have the effect of a will." *Fatheree* v. *Lawrence*, 1 George, 419.

Under similar legislation in Alabama, the courts of that State have declared that an executor "is not entitled to exercise any power as such, until he has been qualified in the mode pointed out by the statute." *Gardner* v. *Gantt*, 19 Ala. 670; *Cleveland* v. *Chandler*, 3 Stew. 489.

So it has been held, that like legislation, in Virginia, has restricted the common law powers of executors. They must qualify before they can act. *Munroe* v. *James*, 4 Munf. 194.

So in Ohio the will must be probated—be judicially established— before the executor can act. *Bailey* v. *Bailey*, 8 Ohio, 245.

Our statute in relation to foreign wills, shows the necessity of probate and grant of letters here. Hutch. 651, §§ 25, 26.

Under a similar statute, the courts of Kentucky hold that a foreign executor cannot sell lands in that State. He must obtain authority by grant of letters there. *Jackson* v. *Jeffries*, 1 A. K. Marsh. 89, 90.

The general rule is, that an executor "cannot intermeddle with, or sue for the effects of the testator in another State." *Kerr* v. *Moon*, 9 Wheat. 571.

The whole question is settled if we consider one fact: Leavens

was executor in Alabama, and nowhere else.   As to the Mississippi lands, he was never executor at all; for he never qualified here. As to those lands, he could act as executor only under the laws of Mississippi, and he never assumed that character.   We have seen that he had no authority, even in the domicil of his testator, until he obtained judicial license to act by letters testamentary.   If he could act here in the manner stated by adverse counsel, it must be that he derived authority so to act from the court of Alabama, and Mississippi lands may be thus sold by authority of the courts of a foreign jurisdiction.

The deed is therefore void, for want of letters testamentary granted in Mississippi.

2. It is void for another reason.   The pretended executor contracted and sold the land at private sale, when not so directed by will.

Our statute provides : "It shall not be lawful for any executor to take the estate, or to dispose of the same at private sale, except when the same is directed by the will."   Hutch. 669, § 109.   The sale could be lawfully made only by authority of the Probate Court, and upon the terms and in the manner prescribed by law.

3. The deed is also void for this.   The power of sale was conferred on the two executors, Leavens and Sheffield.   The will conferred a mere naked power, to be exercised according to the discretion of the two, for certain purposes, and that power could be exercised only by the two jointly.   This deed, executed by Leavens alone, is therefore null.

The rule in such cases has been thus declared by this court: "Whenever a power to act is conferred upon two or more, and it is dependent upon their judgment whether the act shall be done or not, the power conferred in such a case is a special trust or confidence reposed in the judgment of all, and without the concurrence of all, the power cannot be exercised."   *Bartlett* v. *Sutherland*, 2 Cushm. 403; *Roseboom* v. *Mosher*, 2 Denio, 69; *Dominick* v. *Michael*, 4 Sandf. 400–1;   *Bull* v. *Bull*, 3 Day, 384;   4 Kent, 325.

Even where the power is to *executors as such*, it survives only " so long as the plural number remains."   4 Kent, 326;   2 Hilliard Real Prop. 592–3.

Such was the settled rule at common law.   By statute, 21 H. 8,

c. 4, it was provided that the executors who undertook the execution of the will, might exercise such power; and a similar enactment exists in many of the States. If any statute of Mississippi applies to this case, it is the act in Hutch. 671, § 113. Its words are : "If none of the executors named in such will shall qualify, or after they have qualified, shall die before the sale, conveyance," &c. It will be noted how fully this clause confirms the view, that an executor must qualify by taking the oath, giving bond, and obtaining letters, before he can act at all; but we now cite it to show that, if the statute has abolished the common law rule requiring all the executors to join in the execution of such a power, a grant of letters is indispensable to enable a less number to act. Accordingly, this court has held, upon this statute, that where two are empowered, he who qualifies may act. *Bodley* v. *McKinney*, 9 S. & M. 357–8.

It needs no argument to show what sort of qualification is required, or to prove that the courts of another State cannot qualify an executor to act in Mississippi. The plain requirement is, that the oath must be taken, the bond given and approved, and the letters issued in this State. Such qualification must be pursuant to the law, and under sanction of the judicial authority of Mississippi.

Where a Kentucky statute provided that those who might "undertake the execution of the will," should be authorized to make such sale, it was held they must qualify in that State. *Carmichal* v. *Elmendorf*, 4 Bibb, 485.

If these views, or either, be correct, the plaintiff in error has no cause to complain that his evidence to prove a will was rejected. We may admit there was such will, and the fatal objections remain, that Leavens was not qualified, nor authorized, to execute it in Mississippi, and that the sale was private, and contrary to the statute.

It is idle to insist that an executor derives his authority from the will, and not from the probate, &c. All that must depend on the local law. And we have seen that, under the law of Alabama, an executor must obtain a grant of letters, before he can act. As Leavens could not act there, without letters, it is vain to pretend that he may so act here, upon the mere authority of an Alabama will. But if such was the general rule, it would not apply in this case. Here was a power to be exercised by two, jointly, and they

are to sustain an exercise of that power by one, alone. For this purpose, they must resort to a statute, which makes a grant of letters an indispensable authority in such a case.

HANDY, J., delivered the opinion of the court.

This was an action of ejectment, brought by the defendants in error, to recover a tract of land in Lowndes county, in the possession of the plaintiff in error, who held under one Abijah Mann, Jr.

The claim of the plaintiffs below was founded upon the title of Mrs. Butler, as the sole heir at law of Joshua B. Leavens, deceased.

By agreement of the parties, it was admitted on the trial, that Joshua B. Leavens was a resident citizen of the State of Alabama, and that he died there, having, at the time of his death, a perfect title to the land in controversy; that a copy of a deed of conveyance for the land, executed by Benjamin Leavens, executor of Joshua B. Leavens, to Abijah Mann, Jr., dated 17th April, 1841, should be admitted in evidence, to have the same effect as the original would have, if produced and proved; that at that date, Helen N. Butler, one of the plaintiffs, was under the age of twenty-one years, but was married to Thomas J. Butler, and was the only child and heir at law of Joshua B. Leavens, and that her mother was dead; and accompanying this agreement, was the deed referred to in it. Upon this evidence, and upon the admission that the defendant was in possession of the premises, the evidence in behalf of the plaintiffs was closed.

The defendant then read in evidence, the deed above mentioned from Benjamin Leavens, executor of Joshua B. Leavens, to Abijah Mann, Jr., for a large quantity of lands, embracing that in controversy, reciting the consideration of it to be a full settlement of all causes of difference between the surviving partners of the firm of St. John & Leavens, and Benjamin Leavens, executor, he acting in the matter under the powers conferred upon him by the will of Joshua B. Leavens, and representing the interests of his estate.

The defendant then offered in evidence, a copy of the bond executed by Benjamin Leavens, as executor of Joshua B. Leavens, dated 8th July, 1835, from the Probate Court of Mobile county, in the State of Alabama, duly authenticated; and a copy of a petition

Crusoe *v.* Butler and wife.

filed in that court by Butler and wife, in February, 1838, setting forth the grant of letters testamentary upon the estate to Benjamin Leavens, on the 8th July, 1835—the probate of the will in that court—and praying distribution of the estate to them.

He next offered in evidence, an exemplification from the Probate Court of Lowndes county, in this State, of the record of an authenticated copy of the last will and testament and codicil of Joshua B. Leavens, deceased, as admitted to probate by the Probate Court of Mobile county, in the State of Alabama. This exemplification, and the authenticated copy from the Probate Court in Alabama incorporated into it, contains the will of Joshua B. Leavens and codicil to it, each appearing on the face to have been attested and subscribed by three witnesses—showing that on the 8th July, 1835, the will and codicil were produced by Benjamin Leavens, in the Orphans' Court of Mobile county, and that he proved "the due execution of said will by the oath of John Elliott, one of the subscribing witnesses thereto, and of said codicil by the oath of Newton St. John, one of the subscribing witnesses to the same;" and that it was thereupon ordered that the will and codicil should be admitted to probate, and that letters testamentary be granted to Benjamin Leavens. And the exemplification shows that this authenticated copy was, at August term, 1854, of the Probate Court of Lowndes county, " ordered to be admitted to probate, and recorded in that court, as an authenticated copy of the last will and testament of Joshua B. Leavens, deceased."

He next offered in evidence, an authenticated transcript of the same will and probate, from the Probate Court of Mobile county.

He then offered in evidence, a transcript of the record from the Circuit Court of the United States in Alabama, showing a bill in chancery filed by the surviving partners of St. John & Leavens, against Benjamin Leavens, executor, and Butler and wife as heir and distributee of the estate of Joshua B. Leavens, seeking to charge the estate of Joshua B. Leavens, in a very large amount, for moneys of the firm applied by Joshua B. Leavens to his individual benefit in speculations and otherwise, and in purchasing large quantities of lands in this State and elsewhere, and seeking to charge those lands with the debt due to the surviving partners, or to have an interest in their behalf declared upon those lands. The record

shows the answer of the executor, and of Butler and wife, to the bill; and after the cause was at issue upon the pleadings, and in progress of litigation, that the bill was dismissed on the motion of the complainants.

The defendant then offered in evidence, the deposition of George E. Sheffield, who testified that, though one of the executors appointed by the will of Joshua B. Leavens, he did not qualify, and therefore, did not join in the conveyance of the lands made by Benjamin Leavens to Abijah Mann, Jr.; that this conveyance was made by way of compromise and settlement of a large indebtedness from Joshua B. Leavens, to the surviving partners; that he considered the settlement advantageous to the estate, and so advised the executor.

Also the deposition of William Dunn, who testified that he was solicitor for the complainants in the suit in chancery, that the suit was settled by compromise, and the lands described in the deed above-mentioned were conveyed as a part of the compromise, and that the suit was dismissed in consequence of that settlement.

Also the deposition of Samuel St. Johns, one of the partners of the firm, who testified in substance as the witness Dunn, in relation to the settlement, and dismissal of the suit in consequence of it, and that the debt against the estate thus settled was large, and was not paid by the settlement by a large amount.

Also the deposition of John A. Campbell, who testified that he was solicitor for Benjamin Leavens in the suit in chancery, and that it was settled about the time the deed bears date; that the negotiations which led to the settlement, were carried on whilst the parties were engaged in taking depositions in the suit, and were conducted under the professional advice of the law firm of which witness was a member, representing Benjamin Leavens, executor, and of George N. Stewart, who represented Butler and wife; that Leavens instructed witness to consent to no agreement for settlement unless it was assented to by Butler, and he thinks that the most important, if not all the papers of the settlement, were drawn by Mr. Stewart, counsel for Butler and wife; that Butler assented to the settlement, and gave Leavens a writing to that effect. But witness had no conversation with Mrs. Butler on the subject, and could not recollect any personal interference by her in the matter; that he con-

sidered the settlement fair and favorable to the estate of Leavens, the debt claimed against it at the date of the settlement being over one hundred thousand dollars.

The defendants also offered two other transcripts of records in chancery in the State of Alabama, showing that Butler and wife had admitted by their bill in the one case, and by their answer in the other, the due execution and probate of the will of Joshua B. Leavens in that State.

To the reading of each of these several transcripts and depositions, the plaintiffs objected, and their objection was sustained, and all the transcripts and depositions were excluded as evidence; to which the defendant excepted.

Upon the competency and effect of the evidence thus rejected, several questions arise and have been argued by counsel; and we will proceed to consider such of them as appear to be material in settling the principles which govern the case.

We will first consider the action of the court in rejecting the record of the probate of the will in Alabama.

The rule is well established, that the conveyance of real estate must be made according to the law *rei sitæ*, which alone can prescribe the mode in which title to such property, or any right or interest therein, may pass; and a will made and admitted to probate in a foreign State or one of the States of this confederacy, is not sufficient to pass title to land in another State where it is situate, unless the will be admitted to probate in the latter jurisdiction according to its laws. *McCormick* v. *Sullivant*, 10 Wheat. 202; *United States* v. *Crosby*, 7 Cranch, 115; *Kerr* v. *Moon*, 9 Wheat. 565; *Carmichal* v. *Elmendorf*, 4 Bibb, 484; *Cornelison* v. *Browning*, 10 B. Munroe, 428. This rule is not affected by the provision of the Act of Congress of 26th May, 1790, " that the records and judicial proceedings of the courts of any State, shall be proved or admitted in any other court within the United States, by attestation, &c., . . . . . and that said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them, in every court within the United States, as they have by law or usage in the courts of the States from whence said records are or shall be taken." Under this act the record of a judgment in one of the States is entitled only to such credit, validity, and

effect in another State as it has in the State where it was rendered. But as a will disposing of real estate is only effectual for that purpose when made according to the law of the State where the land is situate, and its operation is entirely local, a probate in another State could give it no credit or validity there as to such land, and consequently under the provisions of the Act of Congress, it could give it none in the State where the land lay. Accordingly, the cases are numerous where probates of this character have been held insufficient to establish the will in another State where the land was situate, so as to pass the title. *Barnes* v. *Brashear*, 2 B. Munroe, 380; *Varner* v. *Bird*, 17 Ala. 290. Considering how well recognized the rule has always been that the title to lands can only be conveyed according to the law of the State where they are situate, it is not to be supposed that it was the intention of the Act of Congress to give to another State, presumed to be unacquainted with the laws of the State where the lands are situate, the power to establish a conveyance, and, by the judgment of its courts render it effectual to pass the title; for that would give to a foreign tribunal power to establish a conveyance, and adjudge the title to land in another State, contrary to the positive laws of that State. It is much more reasonable to suppose, that the act was intended to apply to judicial proceedings affecting rights of a personal or transitory character; and this we consider the proper construction of it. Hence the record of the probate from Alabama was not sufficient to establish the will, and it was properly excluded as evidence.

The next question arises upon the exclusion of the record of the probate in the Probate Court of Lowndes county.

There can be no doubt but that a copy of a will bearing upon its face the requisites of our laws in order to render it valid as to real estate, and shown to have been duly proved and admitted to record in another State, in which the testator had his domicil, may be admitted to probate in this State, and will be effectual as to lands lying here. Such is the plain effect of our statute upon the subject. Hutch. Code, 651, § 25. And the like effect has been given to such probates under similar statutes in other States. This is held in the cases above cited from Kentucky and Alabama, and 10 Wheaton.

But two objections are urged against the sufficiency of this probate. The first is, that the will appears upon the face of the

Crusoe *v.* Butler and wife.

authenticated copy from Alabama, to have been proved in that State by but one of the subscribing witnesses, there appearing on the face of the will to be three. The record shows that the executor "proved the due execution of the will by the oath of John Elliott, one of the subscribing witnesses thereto, and of said codicil by the oath of Newton St. John, one of the subscribing witnesses to the same;" and that it was thereupon admitted to probate, &c. This showed sufficient proof of the will. When there appears by the face of the will to have been the requisite number of subscribing witnesses, the will may be proved by one, if he prove that it was duly attested by the others. And if the record state that it was duly proved by one of them and admitted to probate, and it does not affirmatively appear that that witness proved *only* the attestation by himself, and execution in his presence, it will be presumed that he testified to every fact necessary to due execution. *Cornelison* v. *Browning,* 10 B. Munroe, 425, 427, and the cases there cited.

This objection, however, is untenable for another reason. The copy of the will was "ordered to be admitted to probate, and recorded" in the Probate Court of Lowndes county. That act was clearly within the jurisdiction of the court, and it cannot be collaterally impeached, even if the court acted erroneously in its judgment as to the sufficiency of the original probate in Alabama. *Griffith's Admr.* v. *Vertner,* 5 How. 736. It stands like any other judgment of a court of competent jurisdiction, and can only be declared invalid by a direct proceeding for that purpose.

The other objection is, that the admission of the will to probate in this State, was not made until the year 1854, and after the date of the deed from the executor under which the defendant claimed title, and after the commencement of this suit.

The codicil of the will under which the power to make the deed is claimed, is in these words: "I do hereby declare and direct, and give full power and authority to my said executors (previously named) or the survivor of them, and shall have power, whenever, and from time to time, as they may think expedient and according to their discretion, to bargain, sell, convey, lease, release or incumber, or otherwise dispose of in fee or otherwise, all and any of my real estate, wheresoever the same may be situate, either for the purposes of paying debts, making divisions, or distribution, or when they

shall think it beneficial for any purpose to do so, in which case the proceeds shall be distributed, kept, or applied, as the property is required to be by my said will, the true intent and meaning of this codicil being fully to affirm the dispositions of my said will, and the better to enable my executors to carry into effect, and the better to enable them to place the said property in such situation as may be convenient, and more beneficial and profitable, and by giving the power to sell and convey lands, to enable them more conveniently to benefit all parties interested in the bequests thereof."

By the will he had previously given one fourth of his estate, real and personal, to his brother, Benjamin Leavens, to his sister Susan, one fourth part, and the residue to his daughter, Mrs. Butler.

It cannot be doubted, that a special *power to sell the lands* was conferred upon the executors by the codicil, and that they were capable of exercising it so soon as the will was admitted to probate. It was derived from the will, and the probate was but evidence of its execution, and not the foundation of the power granted to the executors, and this is especially true, as the power conferred was foreign and distinct from the ordinary office of the executors. When the will was probated in Alabama, the power granted had relation back to the death of the testator. The grant of letters was merely the establishment of the character of the executors, and operated as a sanction to their exercise of the special power granted to them, in their character as executors by the will. The power in them was thus complete upon the probate of the will, and their undertaking the trust in Alabama; and when the will was admitted to record in this State, it was merely for the purpose of authenticating the evidence by which the special power was established, and of rendering the prior right available here. But it was clearly neither the source nor the foundation of the power. Being the grant of a power not appertaining to the duties of an executor in the general administration of the estate, it comes within the rule laid down in the authorities in relation to the general powers of executors in England. "Such probate," says Williams, "is, however, merely operative as the authenticated evidence, and not at all as the foundation of the executor's title; for he derives all his interest from the will itself, and the property of the deceased vests in him from the moment of the testator's death. Hence the probate, when produced, is said

to have relation to the time of the testator's death." 1 Wms. Exors. 172 (2d Am. edit.) And it is laid down, that, though an executor may dispose of the property according to the will, before probate, yet if it be necessary to support the title so derived, the probate must be produced. Ib. 174. The rule is also sanctioned in *Pool* v. *Flegan*, 11 Peters, 211, and in *Lewis and wife* v. *McFarland*, 9 Cranch, 151. It would probably not be applicable, under our laws, to a case of disposition of property by an executor, which was strictly assets in his hands, and held by him only for administration. But in the present case, it applies with full force, and is a sufficient answer to the objection under consideration.

Another, and a very material, question presented is, whether it was necessary that letters testamentary should be granted to the executor in this State, upon admitting the will to record here? It is insisted, in behalf of the defendants in error, that as no such letters were granted here, the executor was never invested with the authority to exercise the power to convey the lands conferred upon him by the will, and hence, that his deed is void. This question is intimately connected with the one last considered.

The grant of letters testamentary, as authority to the executor to act, has reference to the personalty and the ordinary offices of administration. Generally, it has no reference to real estate, and can give no power over it to the executor. For aught that appears in this record, there was no personalty in this State to administer, and no necessity for a grant of letters here. The only necessity for taking any steps here, in relation to the will, appears to be, to make it evidence in our courts. The will granted a power not appertaining to the subject-matter of administration under the authority of our Probate Courts—a trust committed by the testator to the persons who should become his executors. In such a case, the executor derives his authority from the will, and not from letters testamentary; and such letters could have conferred no power over the land, except what was given by the will. It is true, his character and capacity as executor must be established by proof of the will. But when the will was admitted to probate here, and it was shown that he had taken upon himself the office of executor, the power to sell the land, which was independent of his appropriate functions as executor, became vested. Under the circumstances of

the case, the only necessity for the grant of letters was to fix the person who was to execute the power granted by the will; and that having been done by the proper court of the testator's domicil, it was unnecessary to obtain letters in this State; for they could have been useful only for the purpose of fixing the person to execute the power. In principle, the case is not distinguishable from that of a devise of a power to individuals, not executors, to sell lands lying in a different State from that of the testator's domicil, in which the will was admitted to probate ; for, after the character of the executor has been once established, the person to whom the power is granted is fixed; and it is only necessary, in executing the power in another State, or in showing that the previous exercise of it is effectual there, to admit to probate, in the State, the will giving the power, and to show that the party exercising it is clothed with the character designated in it. The principles stated in the cases of *Lewis and wife* v. *McFarland*, *McCormick* v. *Sullivant*, and *Carmichal* v. *Elmendorf*, sustain this view.

Our statute does not contemplate the appointment of executors here in all cases, where an authenticated copy of a will admitted to probate in another State, may be ordered to be recorded in this State. Hutch. Code, 651, § 25. It does not prescribe that letters shall be granted in any case of the admission of such wills to probate here ; and the manifest purposes which it was intended to answer, only render such letters necessary when required for the exercise of the appropriate offices of an executor, suing and being sued, and in the various acts connected with the administration of the personalty. But where the will conferred a power or interest which did not come within the jurisdiction of the Probate Court here, and yet rendered it necessary that the will should be admitted to probate here, nothing further could have been intended, than that the will should be admitted to record, and thereby established as a will affecting the rights of parties to property situate here, and disposed of by or under it, so as to render it evidence of the rights derived from it.

Hence, we are of opinion, that it was not necessary that letters testamentary should have been granted in this State, in order to render the deed of the executor valid. And it would follow, from the preceding views, that the deed under which the defendant

claimed title was made under a will duly admitted to probate, and that the executor was empowered to execute it, and consequently that it is valid to convey title to the land.

But it is again objected, that the power to convey the land was given by the will to the two executors; and, being a matter resting in the discretion of both of them, that it required the joint deed of both of the executors, to make a valid conveyance; and, therefore, that the deed of Benjamin Leavens, as sole executor, is insufficient.

It is above seen that the power to sell was not strictly executorial in its character, but a trust independent of the proper duties of the executors. It arose from a will executed by a testator, domiciled and who died in Alabama, and which was admitted to probate there. The nature, obligation, and interpretation of the instrument, and the rights and powers arising under it, must be determined by the law of that State. Story's Conf. Laws, §§ 262, 490, 479 a, 479 h, 479 m. And it has been decided by the Supreme Court of that State, in a suit involving this will, and between Leavens, the executor, and the plaintiffs in this action, that the power granted by this will might be exercised by the executor who qualified, and that it did not require the co-operation of both of the individuals named as executors in the will. *Leavens* v. *Butler*, 8 Porter, 380–394. This must be taken as decisive of the point, however different it may be from the rule which this court has held upon the same question, and in a case governed by our laws.

The next question arising, is the admissibility of the record of the suit in chancery, brought by the surviving partners of the testator against his executor and the plaintiffs in this action, and the depositions of the witnesses offered in evidence in relation to it. The purpose for which this evidence was offered, appears to have been to show that a large claim against the estate of the ancestor of the plaintiffs, had been discharged by means of the conveyance of the land in controversy, and other lands, and that the settlement of this claim was beneficial to the estate, and the plaintiffs, the distributees of it. The objection to its admissibility is, that it could not affect the rights of Mrs. Butler, who was then a *feme covert* and a minor.

The evidence offered shows that the settlement was made by the solicitor of Butler and wife, and by the special consent of Butler;

that the claim against the estate was thereby discharged, and that the arrangement was beneficial to those entitled to the estate.

It is a general rule, that a party is estopped by a course of conduct by which he has induced others to act, or has acquired an advantage to himself. 1 Greenl. Ev. §§ 27, 207; and this rule is applicable to *femes covert.* Fonbl. Eq. book 1, ch. 3, § 4; 1 Story's Eq. § 385. Whether the compromise of the suit in chancery was made by the positive sanction of Mrs. Butler or not, it appears that it was made by her solicitor with the concurrence of her husband; the suit against her was dismissed, and the claim against her discharged, in consequence of it. In the absence of all evidence tending to show that she was prejudiced in the transaction, these facts would go far to show that she consented to the arrangement. But, in addition to this, the fact that the estate in which she was interested was benefited by it, which must be taken as a benefit to her interest in it, concludes her from denying its validity, and from depriving the other party of the right which he has acquired thereby, without restoring that party to the position he occupied before the arrangement.

But as the chief justice is of opinion that this evidence was not competent, by reason of the disability of Mrs. Butler, no decision is made as to its admissibility.

The other two transcripts of records offered in evidence, appear to have been introduced for the purpose of showing admissions by the plaintiffs, that the will had been duly established. These proceedings took place with parties having no connection with the rights and interests involved in this suit, and the alleged admissions therein were incompetent to prove the execution of the will. They were, therefore, properly excluded.

We are of opinion that the court erred in excluding from the jury the copy of the bond of Benjamin Leavens, as executor, executed in Alabama, the exemplification from the Probate Court of Lowndes county, and therefore the judgment is reversed, and the cause remanded for a new trial.